IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHAD BLACK, #317266, | ) Civil Action No. 3:11-2841-MBS-JRM |
| Plaintiff, | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA DEPARTMENT OF CORRECTION; AND WARDEN WILLIE L. EAGLETON, | ) |
| Defendants. | ) |

Plaintiff, Chad Black, filed this action under 42 U.S.C. § 1983[1] on October 24, 2011. He is an inmate with the South Carolina Department of Corrections ("SCDC") housed at the Evans Correctional Institution. Plaintiff appears to allege constitutional claims pursuant to 42 U.S.C. § 1983. On December 22, 2011, Defendant SCDC filed a motion to dismiss. Because Plaintiff is proceeding pro se, he was advised on December 22, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant SCDC's motion to dismiss could result in the dismissal of his complaint. Plaintiff filed a response on January 9, 2012. On April 9, 2012, Defendants filed a motion for summary judgment. A second Roseboro order was issued on April 10, 2012. Plaintiff did not file a response.

## DISCUSSION

Plaintiff alleges that, while being escorted in handcuffs and lead chains by two correctional officers, an unrestrained inmate ran up to him and started stabbing him multiple times in his chest,

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(l)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the Court.

arms, and back. Plaintiff claims that correctional officers J. Brown and T. Pervis (who are not parties to this action) saw the incident, but did not attempt to stop the inmate or use chemical munitions to alleviate matters. He states that he was seen by medical staff after the incident. Complaint at 3-4. Plaintiff requests $500,000 in compensatory damages so that he "may pursue further medical and dermatology treatment for future reference." He also requests a "separation" and transfer to prevent any harassment or retaliation due to his bringing this action. Complaint at 5.

Defendant SCDC contends that its motion to dismiss should be granted because it is not a person under § 1983 and Plaintiff cannot assert a claim under § 1983 against an inanimate object. Defendants argue that their motion for summary judgment should be granted because: (1) Plaintiff failed to exhaust his available administrative remedies as to Defendant Eagleton;[2] (2) he fails to state a claim upon which relief can be granted as to Defendant Eagleton as he has not alleged any act or omission on the part of Defendant Eagleton; (3) Plaintiff fails to state a claim for failure to protect; (4) Defendant Eagleton is entitled to Eleventh Amendment immunity in his official capacity and SCDC is not subject to suit under § 1983; (5) Defendant Eagleton is entitled to qualified immunity from monetary damages; (6) the doctrine of respondeat superior is not applicable in a case brought under § 1983; (7) Plaintiff makes no viable claim that Defendant Eagleton was constitutionally deficient in his supervisory duties; (8) Plaintiff cannot prevail on his unfounded claims of retaliatory conduct;

---

[2]Plaintiff filed a grievance regarding the alleged incidents, but did not specifically name Defendant Eagleton in the grievance. It is unclear from the materials provided, however, whether Plaintiff had to specifically name Defendant Eagleton in his grievance in order to exhaust his available administrative remedies. See Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008)(declining to dismiss claim for failure to exhaust where defendants were not named or referenced in the relevant prison grievance as nothing in the North Carolina Department of Corrections' administrative remedy procedure required the plaintiff to identify specific individual(s) in his grievance).

(9) any state law claims should be dismissed; and (10) to the extent Plaintiff seeks injunctive relief, such relief should be denied.[3]

1. SCDC

SCDC appears to argue that it should be dismissed because it is not a "person" acting pursuant to § 1983. It is well settled that states and state agencies are not "persons" as defined by 42 U.S.C. § 1983 and therefore, are not subject to suit under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71(1989). Thus, SCDC, as a state agency, is not subject to suit under § 1983.

2. Failure to Protect

Plaintiff appears to allege that Defendants failed to protect him from an attack by another inmate. Defendant Eagleton argues that Plaintiff's claim fails because Plaintiff made no allegations of any involvement whatsoever on his part in this action. Eagleton also argues that Plaintiff fails to show where he or any prison official knew of any substantial risk of harm to Plaintiff and disregarded that risk. Eagleton states that at no time did Plaintiff inform him or any other SCDC staff member of the need for protective custody or that he was in fear of inmate Raymond Scott, the inmate who attacked Plaintiff. He further states that Officers Brown and Purvis immediately intervened after Scott began attacking Plaintiff, and that the correctional officers did not fail to intervene in the altercation. Eagleton Aff., Paras. 5-7.

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety. See Farmer v.

---

[3] Defendants appear to argue that any claims for injunctive relief should be dismissed because Plaintiff is no longer incarcerated within the SCDC system. They have, however, provided no evidence of this.

Brennan, 511 U.S. 825, 835 (1994). In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

Plaintiff fails to establish an Eighth Amendment claim. He has made no specific allegations against Defendants. Further, Plaintiff fails to establish an Eighth Amendment claim because he has not shown that Defendants knew of a specific risk of harm to him and consciously disregarded that risk.

3. Respondeat Superior/Supervisory Liability

Defendant Eagleton contends that he cannot be held liable on a theory of respondeat superior. He also argues, to the extent that it is construed that Plaintiff has alleged a cause of action for failure to properly supervise subordinates, Plaintiff fails to establish such a claim.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). A plaintiff

must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994). Plaintiff has not alleged that Defendant Eagleton had any personal involvement in the alleged incidents. He has presented no evidence that Defendant Eagleton had actual or constructive knowledge that Eagleton's subordinates were engaged in conduct that posed a "pervasive and unconstitutional risk" of injury to Plaintiff. Additionally, Plaintiff has not shown any affirmative casual link between Defendant Eagleton's action or inaction and Plaintiff's alleged injury. Thus, Plaintiff has not shown any basis for supervisory liability on the part of Defendant Eagleton.

    4.    <u>Retaliation</u>

Plaintiff asks that the Court transfer him to prevent harassment and retaliation due to his bringing this action. Defendants argue that they are entitled to summary judgment as to Plaintiff's claims of retaliation because he has provided no evidence of a retaliatory act, does not point to a specific Defendant as having retaliated against him, and fails to present evidence that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of alleged retaliatory conduct.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act

of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct."' Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc)(citing Adams, 40 F.3d at 74). Here, Plaintiff fails to assert anything more than a bare assertion of retaliation and has not shown that any alleged retaliation had an adverse impact on the exercise of his constitutional rights.[4]

    5.    Immunity

Defendants appear to contend that they are entitled to Eleventh Amendment immunity in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

---

[4] Further, to the extent that Plaintiff is requesting a transfer, such a request for relief cannot be granted. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that the Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendant Eagleton contends that he is entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendant Eagleton violated any of his clearly established constitutional or statutory rights. Therefore, Defendant Eagleton is entitled to qualified immunity in his individual capacity.

7. State Law Claims

It is unclear whether Plaintiff is attempting to assert claims under South Carolina law. As he fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed sua sponte.

**CONCLUSION**

Based on review of the record, it is recommended that Defendant SCDC's motion to dismiss (Doc. 17) be **granted**, and that Defendants' motion for summary judgment (Doc. 27) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

May 23, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).